UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| BLUE GRASS STOCK YARDS OF ALBANY, LLC, | ) ) ) |
| Plaintiff, | ) ) ) No. 2:22-cv-00001 |
| v. | ) ) |
| TERRY PHILLIPS, JR. et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before the Court is Blue Grass Stock Yards of Albany, LLC's Motion for Summary Judgment (Doc. No. 54). Defendants Terry Phillips, Jr., Tanner Phillips, and Phillips Trucking, LLC (collectively, the "Phillips Defendants") filed a joint response, (Doc. No. 59), as did Defendants Bert Smith and Rowdy Livestock, LLC (collectively, the "Rowdy Defendants"). (Doc. No. 57). No reply brief was filed. For the following reasons, the Motion for Summary Judgment (Doc. No. 54) will be granted in part and denied in part.

**I.　BACKGROUND AND UNDISPUTED FACTS[1]**

　A.　<u>Facts Between Plaintiff and Phillips Defendants</u>

Blue Grass Stock Yards of Albany, LLC ("Blue Grass") owns and operates a cattle stock yard in Albany, Kentucky, where it holds weekly live and video cattle auctions. (Doc. No. 59-1 ¶ 1–2). On January 13, 2021, Blue Grass conducted both a live cattle auction and a video cattle auction (the "January 13 Auction"). (Id. ¶ 3). Although the parties agree that Tanner Phillips

---

[1] The facts in this section are undisputed unless specifically noted otherwise and are drawn from the undisputed portions of the parties' statements of facts (Doc. Nos. 58, 59-1), the exhibits, depositions, and declarations submitted in connection with the summary judgment briefing that are not contradicted by the evidence in the record.

("Tanner") attended that auction, (Doc. No. 59-1 ¶ 4), they disagree on the capacity with which he did so. Blue Grass alleges Tanner was there as a designated agent of his father, Terry Phillips, Jr. ("Terry"), (Doc. No. 54-9 ¶ 5), while the Phillips Defendants contend that Tanner attended and bid on the cattle under his own name. (Doc. No. 59-1 ¶¶ 5–10). Regardless, Tanner successfully bid on 48 head of "odd and end" cattle and 229 steers for a total purchase price of $301,807.07, (Doc. No. 59-1 ¶¶ 5–10), and, the following day, his father issued two personal checks to Blue Grass for their full amount. (Doc. No. 59-1 ¶¶ 17, 19).

These purchases were by no means—as the saying goes—the Phillips' first rodeo. Tanner had attended Blue Grass's auction every week since the beginning in the fall of 2020, where he and/or his father had purchased hundreds of cattle for Bert Smith and his limited liability company, Rowdy Livestock, LLC. (Doc. Nos. 59-2 ¶ 4, 59-3 ¶ 5). Until the January 13 Auction, the Rowdy Defendants had reimbursed either Tanner or Terry for the price of the purchased cattle and paid the Phillips Defendants to haul them to the Rowdy Defendants' feedlots in Tennessee, Nebraska, and elsewhere. (Doc. Nos. 59-2 ¶ 6, 59-3 ¶¶ 5, 9). And although Blue Grass's COO, Jim Ackers, avers that Blue Grass (1) would not have done business with the Rowdy Defendants or anyone working on their behalf and (2) had been told by the Phillips Defendants that the Rowdy Defendants were not involved, (Doc. No. 54-4 ¶¶ 16–18), other evidence suggests Blue Grass's manager, Bill Carver, was well-aware of these regular straw purchases. (Doc. No. 59-2 ¶ 8).

But unlike any of the past purchases—although the Rowdy Defendants discussed with Tanner which cattle to bid on and with Terry and Phillips Trucking about their purchase and transport (Doc. No. 59-1 ¶¶ 22–24)—neither Rowdy Defendant wired Terry the money for the cattle won at the January 13 Auction. (Doc. No. 59-3 ¶ 10). As a result, when Blue Grass attempted to cash Terry's checks, the Bank of Putnam County refused to honor them because Terry

2

did not have the funds on hand. (Doc. No. 59-1 ¶¶ 18, 20). By this time, Phillips Trucking had already hauled away the purchased cattle, and they have still not been returned.[2] (Id. ¶¶ 26, 28).

## B. Facts Between Plaintiff and the Rowdy Defendants

The Rowdy Defendants do not dispute the facts described above with one significant caveat: they deny any knowledge of or involvement in the Phillips Defendants' purchases at the January 13 Auction. (Doc. No. 58 ¶ 22–26; see also L.R. 56.01(c) (requiring that a nonmovant respond to a statement of facts either by agreeing that a fact is undisputed or demonstrating that the fact is disputed)).

## II. LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case. Id.

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the

---

[2] On December 12, 2021, a Restitution Order was entered in the Circuit Court for Clinton County, Kentucky, under which Terry Phillips, Jr. agreed to pay Plaintiff in the amount of $301.807.07 for the cattle they purchased at the January 13 Auction. (Id. ¶ 29).

matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595.

Moreover, if, "after adequate time for discovery and upon motion," the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case[] and on which that party will bear the burden of proof at trial[,]" a court should enter summary judgment in favor of the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When this occurs, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 323 (citation an internal quotation marks omitted). Conclusory statements "unadorned with supporting facts are insufficient." Viet v. Le, 951 F.3d 818, 823 (6th Cir. 2020). Thus, if the nonmovant does not support the elements of a claim or defense, the moving party is entitled to judgment as a matter of law.

### III. ANALYSIS

Through its Motion (Doc. No. 54) and accompanying memorandum (Doc. No. 54-8), Blue Grass seeks relief on its collection of bad checks claim (Count I) and breach of contract claim (Count IV) against Terry, as well a flurry of other state law claims (Counts III, V, VI, and VII) and a single federal claim (Count II) against all Defendants. But Blue Grass makes no real effort to satisfy its burden at summary judgment—opting to do little more than recite the elements of each cause of action and claim victory—and its arguments are rife with errors. The Court will address those necessary to dispose of the instant motion, beginning with Blue Grass's state law claims and then turning to its single federal claim.

4

A. Blue Grass's State Law Claims

   i. Many of Blue Grass's State Claims Should Have Been Brought Under Kentucky Law.

Federal courts apply the choice-of-law rules of the state in which they sit. Because it resides in the Middle District of Tennessee, this Court must apply the choice-of-law rules of Tennessee. But Blue Grass would also have this Court apply Tennessee's substantive law to each of its six tort and contract claims. (See generally Doc. No. 54-8 (relying exclusively on this state's statutes and case law)). Tennessee's choice-of-law rules instruct otherwise.

In tort cases, Tennessee abides by the Restatement (Second) of Conflict of Laws, see Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992); Wahl v. General Elec. Co., 786 F.3d 481, 494 (6th Cir. 2015), which provides that "the rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state, which with respect to that issue, has the most significant relationship to the occurrence and the parties under the principals stated in [Restatement (Second) of Conflict of Laws] § 6." Hataway, 830 S.W.2d at 59 (citation omitted). Four contacts aid Tennessee courts in determining the most significant relationship: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. Montgomery v. Wyeth, 680 F.3d 455, 459–60 (6th Cir. 2009) (citation and internal quotation marks omitted). "These [four] contacts are to be evaluated according to their relative importance with respect to a particular issue." Id.

In contract disputes lacking an enforceable choice-of-law provision, Tennessee adheres to the law of the state where the contract was made. Ohio Cas. Ins. Co. v. Travelers. Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973) (affirming the application Kentucky substantive law pursuant to

5

the conflicts rule of *lex loci contractus*); see also Bass v. Bass, No. 3:20-cv-203, 2020 WL 2615538, at *2 (M.D. Tenn. May 22, 2020) (doing the same).

Because Blue Grass invokes only Tennessee law, it has not established that it is entitled to relief on any claim governed by Kentucky law. The Court has identified at least three such claims.

Beginning with Blue Grass's contract claims, Count IV alleges that Terry agreed to pay $301.807.07 for cattle purchased at the January 13 Auction. As alleged in the Complaint and affirmed in Blue Grass's brief, the auction took place in Kentucky. (See e.g., Doc. No. 54-8 at 3 (explaining that Blue Grass's cattle stockyards, the site of the auction, are in Albany, Kentucky)). Accordingly, Kentucky law applies, Ohio Cas. Ins. Co., 493 S.W.2d at 467, and Blue Grass has not met its burden to show "that [it] is entitled to a judgment as a matter of law."[3] Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 500 (6th Cir. 2007). By that same reasoning, Blue Grass cannot succeed on Count I—which alleges that Terry violated a provision of the Tennessee Code by knowingly writing bad checks. Ohio Cas. Ins. Co., 493 S.W.2d at 467; Thomas, 506 F.3d at 500.

Turning to the tort claims, Count V suffers from the same problem. Blue Grass argues each Defendant is liable for either fraudulent or negligent misrepresentation under Tennessee law for failing to disclose Bert Smith's involvement in the purchase of the cattle at issue. (Doc. No. 54-8 at 12–13). However, Tennessee's choice of law rules instruct the Court to apply Kentucky law. Hataway, 830 S.W.2d at 59. After all, the record evidence indicates that the relationship

---

[3] Because the Court cannot dispose of the breach of contract claim, it need not reach Count VI—alleging, in the alternative, unjust enrichment—at this time. See Kalos, LLC v. Twin Springs at White House Village, LLC, 2022 WL 59617 (6th Cir. Jan. 6, 2022) ("But even if we read these allegations to mean that Kalos did not have a contract with some of the defendants, the company could not proceed on an unjust-enrichment theory unless it first 'exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract.'" (quoting Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005))).

between Blue Grass and Defendants is centered at Blue Grass's stockyard in Albany, Kentucky, the alleged misrepresentation occurred there, and the injury—Blue Grass's sale of the cattle at the January 13 Auction—also occurred there. (Doc. No. 54-4 at ¶¶ 16–18 ("Blue Grass specifically asked Terry Phillips, Jr.[,] whether he was engaging in any business with Bert Smith at the time of the auction. Terry Phillips, Jr., unequivocally assured Plaintiff that Bert Smith had no involvement in the transaction. Blue Grass relied on the representations . . . when selling the cattle")). Blue Grass cannot succeed by applying Tennessee law. Thomas, 506 F.3d at 500.

Luckily for Blue Grass, it pleaded these state claims (with the exception of Count I) broadly enough that it may still pursue on these claims at trial.[4]

ii. Blue Grass Has Failed to Meet Its Burden on Its Remaining State Claims.

If Tennessee law applies to the remaining state law claims, Blue Grass still fails to meet its burden at summary judgment, and, therefore, cannot prevail.

Count III alleges that Defendants converted the cattle for their own use and benefit without paying for them, but Blue Grass offers only five facts and zero argument to this point. In full, Blue Grass states:

> Here, the undisputed facts show that: (1) at the time of the auction, the Phillips Defendants were working together with [the Rowdy Defendants] when engaged in the buying of cattle; (2) Defendants took possession of said cattle; (3) Defendants never paid for the cattle; (4) the cattle at issue were hauled away by Philips Trucking for [the Rowdy Defendants] with knowledge that the Defendants did not pay for said cattle; and (5) the cattle at issue have never been returned. Accordingly, there exists no genuine dispute as to any material fact regarding

---

[4] Any similar claim to Count I brought under a Kentucky statute would constitute a new claim. "Parties who seek to raise new claims at the summary-judgment stage [or after] must first amend their pleadings under Federal Rule of Civil Procedure 15(a) before asserting the claims in summary-judgment briefing." Davis v. Echo Valley Condominium Association, 945 F.3d 483, 496 (6th Cir. 2019). "By that point, 'a plaintiff has conducted discovery and has had the opportunity to amend the complaint and raise additional theories.'" Id. (quoting West v. Wayne County, 672 F. App'x 535, 541 (6th Cir. 2016)). The failure to follow this rule "dooms" that claim. Id.

7

> Plaintiff's claim for conversion, and Plaintiff is entitled to a judgment as a matter of law.

(Doc. No. 54-8 at 11). This is inadequate; by stating its case so broadly, Blue Grass fails to meaningfully grapple with the facts at issue and cannot show that it is entitled to relief. At a minimum, Terry must be excepted from this group because Blue Grass's claim for conversion is identical to its breach of contract claim, and "[i]t is well settled under Tennessee law that a tort cannot be predicated on a breach of contract." Communications Unlimited Contracting Services, Inc. v. Comdata, Inc., 611 F. Supp. 3d 483, 496 (M.D. Tenn. 2020). And, based on the facts as Blue Grass alleges (though some remain disputed), Tanner and Phillips Trucking were acting on behalf of Terry. (See e.g., Doc. No. 54-9 ¶¶ 6–10, 22–26). Blue Grass does not explain how conduct that is not tortious when done by a principal becomes so when done by his agent. Worse still, Blue Grass cannot prove that the Rowdy Defendants ever possessed or exercised domain over the cattle—an essential element of any claim for conversion. See PNC Multifamily Capital Inst. Fund. XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp., 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012) ("A party seeking to make out a prima facie case of conversion must prove: (1) the appropriation of another's property to one's own use and benefit; (2) by the intentional exercise of domain over it . . . ."). Accordingly, Blue Grass has fallen far short of its burden.

Blue Grass's Count VII—which alleges civil conspiracy—fares no better. A claim for civil conspiracy requires "'a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose by unlawful means, which result in damage to the plaintiff.'" JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC, 615 F. Supp. 3d 750, 782 (M.D. Tenn. 2022) (quoting Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 703 (Tenn. 2002)). However, Blue Grass offers no evidence showing any Defendant had "combined" to dispossess Blue Grass of its cattle without paying for them or had

knowledge of another's intent to do so, (see, e.g., Doc. No 54-9 ¶ 24 ("Terry Phillips communicated with Bert Smith requesting money from Bert Smith and/or Rowdy Livestock to pay for the cattle purchased.")), and only argues that: "(1) at the time of the auction, the Phillips Defendants were working together with [the Rowdy Defendants] when engaged in the buying of cattle; (2) Defendants took possession of said cattle; (3) Defendants never paid for the cattle; and (4) the cattle at issue were hauled away by Phillips Trucking for [the Rowdy Defendants] with knowledge that the Defendants did not pay for them." (Doc. No. 54-8 at 14–15). These facts do not lay bare any parties' knowledge or intent, let alone establish an unlawful conspiracy.

Accordingly, Blue Grass has failed to meet its initial burden at summary judgment, and Blue Grass's Motion, with respect to its state law claims, must be denied.

B. Blue Grass's Federal Claim: Violation of the Packard & Stockyards Act

Blue Grass also argues that it is entitled to relief on Count II, which alleges that each Defendant violated the Packard & Stockyards Act, 7 U.S.C. § 181 et seq. (the "Act"). Under the Act, "a person . . . engaged in the business of buying or selling in commerce livestock, either on his own account or as the employee or agent of the vendor or purchaser," 7 U.S.C. 201(c), "may be held liable . . . for the full amount of damages sustained in consequence of," id. § 209(b) "any delay or attempt to delay . . . the collection of funds . . . resulting in extending the normal period of payment for such livestock." Id. § 228b(c). That "normal period of payment," as described by the Act, is by the close of the next business day. Id. § 228b(a).

Blue Grass avers that it has established at summary judgment that Defendants violated the Act by proving: "(1) [that] at the time of the auction, the Phillips Defendants were working together with Bert Smith and Rowdy Livestock when engaged in the buying of cattle; and (2) [that] the

9

Defendants failed to deliver to Plaintiff the full amount of the purchase price for the cattle before the close of the next business day." (Doc. No. 54-8 at 10).

There is no doubt that Tanner and Terry purchased Blue Grass's cattle at the January 13 Auction and failed to furnish payment within a business day. (See, e.g., Doc. No. 58-1 ¶¶ 17–20). Neither oppose Blue Grass's request for relief on Count II. (See generally Doc. No. 59). Thus, Blue Grass's Motion (Doc. No. 54) shall be granted as unopposed insofar as it relates to Tanner and Terry's alleged violation under the Act. But based on the record evidence, the Court can go no further. Blue Grass's papers are void of any explanation of how Phillips Trucking might be subject to the Act, (see generally Doc. No. 54-8), and the Rowdy Defendants alleged involvement in the cattle purchases at issue remains hotly contested. (See Doc. No. 58 ¶¶ 22–26). Accordingly, Blue Grass is not entitled to relief under the Act against Phillips Trucking or the Rowdy Defendants.

## IV. CONCLUSION

At least to this point, the record indicates that each party would do well to put more thought into its theory of the case. No doubt, if the choice-of-law issue described above is any indication, other issues that should have been considered months ago will surface before the close of trial. The parties and their counsel should work hard to identify these and individually consider whether continuing to trial is in each client's best interest. The Restitution Order's (Doc. No. 54-5) effect on Blue Grass's potential recovery, for instance, might require greater scrutiny. The Court's determinations here should certainly spark such discourse as well. (See supra at 7 n.4 (explaining that Blue Grass cannot now bring a claim under Kentucky's laws to replace Count I without receiving leave to and filing an amended complaint)).

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 54) will be granted in part and denied in part.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR
CHIEF UNITED STATES DISTRICT JUDGE